# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

|  |  |
|---|---|
| TIEN VO,<br><br>    Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>    Respondents. | Case No. 26-cv-01489-BLF<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Re: ECF No. 2] |

    Before the Court is Tien Vo's Ex Parte Application for a Temporary Restraining Order ("TRO"). ECF No. 2. Mr. Vo filed his Petition for Writ of Habeas Corpus followed by an Ex Parte Application for Temporary Restraining Order against Respondents Acting Field Office Director of the San Francisco Immigration and Customs Enforcement ("ICE") Office Sergio Albarran, Acting Director of ICE Todd M. Lyons, Secretary of the Department of Homeland Security ("DHS") Kristi Noem, and United States Attorney General Pamela Bondi on February 19, 2026, seeking an order temporarily enjoining Respondents from detaining him until such time as he has had an opportunity to challenge his detention before a neutral decisionmaker. Mr. Vo further seeks an order enjoining Respondents from removing him to a third country before he is provided with notice and an opportunity to be heard.

    For the reasons that follow, the application is GRANTED.

**I.    BACKGROUND**

    Petitioner Tien Vo is a refugee from Vietnam who came to the United States when he was five- or six-years-old in 1980. ECF No. 1 ("Pet.") ¶ 6. He then became a lawful permanent resident (a "green card" holder). Pet. ¶ 6. In 2000, was ordered removed, but was released after 180 days pending an order of supervision ("OSUP"). Pet. ¶¶ 7–8. At that time, Vietnamese

individuals like Mr. Vo who entered the United States before July 1995 would have been aware of the repatriation agreement between the United States and Vietnam, which applied to them and prevented repatriation to Vietnam. Pet. ¶ 35. Though he did indeed fear removal to Vietnam, as he tried to file an application for asylum, convention against torture and withholding of removal, he initially accepted the removal order because he understood removal was prohibited in light of the repatriation agreement. Pet. ¶ 7.

For the past twenty-five years, Mr. Vo has worked pursuant to his work authorization document and has begun to rebuild his life and reconnect with family during this time. Pet. ¶ 28. He has two US citizen children and a wife, who is also a US citizen. Pet. ¶ 69. Mr. Vo has post-traumatic stress disorder due to severe trauma. Pet. ¶ 41. He has done recurring volunteer work with at-risk youth. *Id.* He is his family's breadwinner and main source of support. *Id.* Petitioner has also complied with all of the terms of his OSUP, including by regularly attending all of his check-ins over the past twenty-five years. Pet. ¶ 8.

On September 5, 2025, he was detained for the second time at an Immigration and Customs Enforcement ("ICE") check in. Pet. ¶ 9. On January 22, 2026, a district court in the Eastern District of California granted his petition for writ of habeas corpus and he was released from detention. Pet. ¶ 9; *see also Vo v. Albarran*, No. 25-cv-01530-JLT-SKO, 2026 WL 177796 (E.D. Cal. Jan. 22, 2026). Mr. Vo attended his annual check in at the ICE San Francisco Field Office on January 26, 2026, and was instructed to return for another check-in, which is scheduled for February 26, 2026. Pet. ¶¶ 10, 40. On January 30, 2026, Mr. Vo filed a motion to reopen and rescind his removal order before the Board of Immigration Appeals ("BIA") because all of his convictions have been vacated as legally invalid, so he is no longer removable. Pet. ¶ 41.

Counsel for Mr. Vo has been corresponding with Counsel for Respondents. *See* ECF No. 2-2, Affidavit of Notice by Lorena C. Castillo ("Castillo Affidavit") ¶ 2. Counsel for Respondents represented that ICE has a travel permit for Mr. Vo but has not supported that representation with any indication of the source of the country of origin for the alleged permit. Castillo Affidavit ¶ 3. No documentation has been provided to Mr. Vo. *See id.* ICE has also declined to provide any information. *Id.* On February 19, 2026, Counsel for Mr. Vo notified

2

1  Respondents of Petitioner's intention to file a motion for a TRO. *See id.*

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially identical.'" (quoting *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001))). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (alteration in original) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a TRO without notice, as set out in Federal Rule of Civil Procedure 65(b)(1), are met in this case. Counsel for Mr. Vo has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition.

3

Mr. Vo seeks to enjoin Respondents from (1) re-detaining him without notice and an opportunity to be heard, or (2) removing him to a third country without constitutionally adequate procedures, including notice and an opportunity to respond and apply for fear-based relief.

The Court begins with Mr. Vo's claim in connection with re-detention. The Court finds that Mr. Vo has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips *sharply*" in his favor. *Weber*, 767 F.3d at 942 (citations omitted). Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Courts have previously found that individuals released pursuant to OSUP have a protectable liberty interest in remaining out of custody. *See Bedrosian v. Noem*, No. 25-cv-02814-KES, 2026 WL 127800, at *7 (C.D. Cal. Jan 15, 2026); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025). For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—require that Mr. Vo not be re-detained without notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody.

Mr. Vo has a substantial private interest in remaining out of custody, which would allow him to live at home, work, and continue to provide for his family. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Like other courts in this district, this Court concludes that the Government's interest in re-detaining Mr. Vo without a

4

hearing is "low," particularly in light of the fact that he has appeared for prior immigration hearings and does not have a criminal record. *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970.

Turning to Mr. Vo's removal claim, "[t]he Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as stated in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1053 (9th Cir. 2023)). "A noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews*, 424 U.S. at 349; *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lunch*, 630 F. App'x 724 (9th Cir. 2016).

On the record before the Court, there currently exists no country to which the Government could remove Mr. Vo without his first receiving notice of the identification of that country and the opportunity to present a fear-based claim. The Government has failed to back up its suggestion that a third country has been identified for removal with the actual documentation supporting that claim. Absent proper written notification, Petitioner has shown that his removal without a hearing would likely violate his due process rights. *Aden v. Nielson*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). Further, Mr. Vo has offered sufficient facts at this preliminary stage to show that his detention until the start of that process and during its pendency would be "indefinite"— i.e., that "there is no significant likelihood of removal in the reasonably foreseeable future"—and that, even if his removal were likely in the reasonably foreseeable future, his detention would not be "reasonably necessary" to effectuate his removal. Accordingly, Mr. Vo. has shown at least that serious questions exist as to the merit of his claims.

Mr. Vo is also likely to suffer immediate and irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized "irreparable harms imposed on anyone

subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). He is the breadwinner for his family. He is a father of two US citizen children and the husband of a US citizen wife. As a consequence, those risks are present here.

Finally, the balance of the equities and the public interest, which merge because the government is the opposing party, tip sharply in Mr. Vo's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). There is no indication that Mr. Vo will not appear at future ICE check-ins, as he has consistently complied with his supervised release requirements for the last twenty-five.

Without the requested injunctive relief, Mr. Vo faces deprivation of his liberty. The comparative harm potentially imposed on Respondents is minimal—a mere short delay in detaining and removing Mr. Vo, should the government ultimately show that detention or removal is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). This Court therefore joins a series of other district courts that have recently granted TROs barring the government from detaining and removing noncitizens who have been on longstanding release in their immigration proceedings, without first holding a pre-deprivation hearing before a neutral decisionmaker. *See, e.g., Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *5 (N.D. Cal. June 26, 2025); *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 3290223 at *2 (N.D. Cal. Aug. 22, 2025); *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025).

Accordingly, the Court hereby GRANTS Mr. Vo's Ex Parte Motion for a Temporary

Restraining Order. Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

Mr. Vo submitted thirty-five pages of briefing in support of his TRO Application that is not in compliance with Civil Local Rule 7-2(b). Counsel for Mr. Vo is admonished that the Court's local rules are mandatory and that briefs exceeding twenty-five pages will not be accepted in the future.

IV. **ORDER**

IT IS HEREBY ORDERED that:

(1) Tien Vo's Application for a Temporary Restraining Order is GRANTED. Respondents are ENJOINED AND RESTRAINED from arresting, detaining, or removing Mr. Vo without notice and a hearing before a neutral decisionmaker. This Order shall remain in effect until **March 6, 2026** at **11:45 a.m.**

(2) The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and no later than **February 23, 2026, at 12:00 p.m.**, and Mr. Vo shall file proof of such service by no later than **February 23, 2026, at 5:00 p.m**. Email service is permitted.

(3) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing before the undersigned on **March 5, 2026**, at 9:00 a.m., in person in Courtroom 1 at the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, California, 95113, why a preliminary injunction should not issue. Respondents may file a response to Mr. Vo's motion by no later than **February 26, 2026, at 12:00 p.m.** Mr. Vo may file a reply by **March 3, 2026, at 12:00 p.m** limited to ten pages.

Dated: February 20, 2026 at 11:45 a.m.

_____
BETH LABSON FREEMAN
United States District Judge